UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TINA S.[1],

              Plaintiff,

       v.                                        1:21-CV-219 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

## DECISION AND ORDER

Plaintiff Tina S. brought this action under 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that she was not disabled.  Dkt. 1.  Plaintiff moved for judgment on the pleadings.  Dkt. 8.  The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied.  Dkts. 9, 11.  For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance

Benefits ("DIB") filed on April 10, 2018.[2]  Tr. 96.[3]  Plaintiff's application was

initially denied, and she requested a hearing before an administrative law judge

("ALJ").  Tr. 35-62.  Following the hearing, in which Plaintiff was represented by a

non-attorney representative, ALJ Sharda Singh issued a decision finding that

Plaintiff was not disabled.  Tr. 13-30.  Plaintiff's request for Appeals Council ("AC")

review was denied, after which Plaintiff commenced this action.  Tr. 1-7; Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

Judicial review of disability claims under the Act is limited to whether the

Commissioner's decision is supported by substantial evidence and whether the

correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729

F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive

when supported by substantial evidence.  *See Biestek v. Berryhill*, 139 S. Ct. 1148,

1152 (2019).  "Substantial evidence" is "more than a mere scintilla" and "means

such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Plaintiff applied for SSD.  To receive SSD, a claimant must show that she became disabled while meeting the Act's insured status requirements.  *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022).

[3] The filings at Dkts. 6 and 7 are the transcript of the proceedings before the Social Security Administration.  All references to Dkts. 6 and 7 are hereby denoted "Tr. —."

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

II. **Disability Determination**

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 404.1572. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 404.1520(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age,

4

education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof

shifts from the claimant to the Commissioner to prove that a significant number of

jobs in the national economy exists that the claimant can perform given her/his

RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g), 404.1560(c); *see*

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ determined that Plaintiff met the insured status requirements

through December 21, 2022, and had not engaged in substantial gainful activity

since her alleged onset date of March 14, 2018.  Tr. 18.  The ALJ also found that

Plaintiff suffered from the following severe impairments: status post brain tumor

removal, headaches, obstructive sleep apnea ("OSA"), obesity, and osteoarthritis of

the knees.  *Id.*  The ALJ concluded that Plaintiff's severe impairments did not meet

or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Tr. 20.

After considering the entire record, the ALJ determined that Plaintiff had the

RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the

following limitations:

> no climbing ladders, ropes or scaffolds; limited to occasional
> climbing ramps, stairs, balance, stoop, kneel, crouch and crawl;
> and is to avoid hazards such as moving machinery.

*Id.*[4]

---

[4] As defined in the regulations, sedentary work involves:

The ALJ found that Plaintiff was able to perform her past relevant work as a "cashier gambling." Tr. 24. As such, according to the ALJ, Plaintiff had not been under a disability since her onset date of March 14, 2018. *Id.*

## II.   Plaintiff's Argument

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to evaluate evidence in the record properly, resulting in unsupported step-two and step-four determinations. Dkt. No. 8 at 18-27. Second, Plaintiff argues that the AC failed to account for new and material evidence. *Id.* at 27-30.

## III.   Analysis

### A.   Mental Impairments at Step Two

Plaintiff argues that the ALJ failed to find her mental impairments severe at step-two and that the ALJ's error was not harmless. Dkt. No. 8 at 20-21. Plaintiff asserts that the consultative examiner found "moderate" limitations in mental functioning and treating source diagnosed mental impairments and, therefore, her mental impairments were severe. *Id.* at 20. Plaintiff's arguments fail.

---

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The ALJ's determination that Plaintiff's mental impairments were non-severe at step-two was proper and supported by substantial evidence.  In general, an impairment or combination of impairments is not severe if it does not significantly limit a plaintiff's ability to do basic work activities.  20 C.F.R. § 404.1522(a).  Examples of basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  *Id.* § 404.1522(b)(3)-(6).

An ALJ's decision that an impairment is non-severe at step two must be "supported by 'substantial evidence' in the record as a whole."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  A finding that a plaintiff's impairment "is non-severe is not supported by substantial evidence [when] the evidence on which it is based is inconsistent with evidence that [the plaintiff's impairment] significantly impaired her ability to do basic work activities."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 17-18 (2d Cir. 2012).  "Notably, it is the claimant's burden to show at step two that she has a severe impairment.  A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe."  *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-991, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018) (internal citations and quotations omitted), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

Here, consistent with case law and the regulations, the ALJ concluded Plaintiff's mental impairments were non-severe because she had mild limitations in

the four broad areas of mental functioning.  Tr. 19.  The four areas, or more commonly known as "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).  The four areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  *Id.*  An ALJ will determine the degree to which a plaintiff's medically determinable mental impairment affects the four areas of mental functioning and plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis.  *Id.*

In her step-two determination, the ALJ concluded Plaintiff had mild limitations in the four areas of mental functioning.  Tr. 19.  The effects of a plaintiff's mental disorder are evaluated on a five-point rating scale.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(a-e).  A mild limitation means a plaintiff's ability to function in the area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  *Id.* § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(b).

A mental impairment rated as "none" or "mild" will generally not qualify as "severe," whereas those rated as "moderate," "marked," or "extreme" will qualify as "severe" under step two.  *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (ALJ properly determined plaintiff's mental impairments were not severe based on substantial evidence in the record showing his mental impairments caused only mild limitations); *see* 20 C.F.R. § 404.1520a(d)(1) (the ALJ "will generally conclude

that [plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities.").

In making her determination, the ALJ relied on medical opinion evidence in the record, treatment records, and Plaintiff's testimony.  The ALJ found the opinions of the consultative sources "persuasive."  Tr. 19-20.  The psychiatric consultative examiner opined that Plaintiff had moderate limitations in her ability to regulate emotions, control behavior, and maintain well-being.  Tr. 701.  The examiner opined that Plaintiff had no limitations in her ability to understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and demonstrate awareness of normal hazards and taking appropriate precautions.  Tr. 700-701.

A non-examining State agency consultative source reviewed Plaintiff's record and concluded her mental impairments were non-severe.  Tr. 88.  The source concluded Plaintiff had "none" or "mild" limitations in the paragraph B criteria.  Tr. 88-89.  The source stated that Plaintiff's medically determinable mental health impairments were "non-severe and only minimally impacts function."  Tr. 89. Further, the source stated that Plaintiff retained "the capacity to perform a full range of [substantial gainful activity] from a psychiatric/cognitive perspective." *Id.*

In addition to the medical opinion evidence, the ALJ considered objective treatment notations indicating that Plaintiff ceased all mental health treatment in September 2018. Tr. 19. Indeed, Plaintiff was discharged from mental health treatment and was no longer taking medication to manage her mental health symptoms. Tr. 908. Lastly, the ALJ considered objective mental status examinations which were normal. Tr. 19.

Although Plaintiff argues that the consultative examiner's opinion that Plaintiff had moderate limitations supports a finding of severe mental impairment, it is not enough for Plaintiff to argue that evidence in the record supports her position. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

The ALJ's conclusion that Plaintiff had mild limitations in the area of adapting and managing oneself was proper and supported by substantial evidence.

The ALJ considered the consultative examiner's opinion that Plaintiff had moderate limitations in her ability to regulate emotions, control behavior, and maintain well-being; however, based on the record as a whole, the ALJ concluded that Plaintiff had mild limitations in this area. In addition to the consultative

examiner's opinion, the ALJ considered Plaintiff's testimony that she had difficulty managing her mood, but that she could take care of herself.  Tr. 19.  Further, the ALJ considered objective medical observations noting normal findings and Plaintiff's lack of mental health treatment after September 2018.  *Id.*  Therefore, although the consultative examiner opined that Plaintiff had moderate limitations, substantial evidence supported the ALJ's determination that Plaintiff's limitations in the area of adapting and managing oneself were mild.[5]

### B.   Medical Opinion Evidence

Plaintiff argues that the ALJ failed to evaluate the medical opinions provided by Adnan Siddiqui, M.D. and Evelyn Ouellette, N.P. properly.  Dkt. No. 8 at 23, 24-25.  Although the ALJ failed to address a statement made by Dr. Siddiqui, any error would be harmless; further, the ALJ properly assessed Nurse Ouellette's opinion.

Under 20 C.F.R. § 404.1520c the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative

---

[5] Any error the ALJ made in finding Plaintiff's mental impairments non-severe was harmless.  Where an ALJ has omitted an impairment from step-two of the sequential analysis, the error is harmless if the ALJ considered the impairments at subsequent steps.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (any error at step-two was harmless because the ALJ considered the plaintiff's impairments during subsequent steps).  The ALJ found that Plaintiff had other severe impairments at step-two and proceeded with the sequential process.  In her step-four analysis, the ALJ discussed treatment Plaintiff received for her mental health impairments, noting that Plaintiff did not receive medication or treatment for mental issues.  Tr. 23.  Therefore, because the ALJ considered Plaintiff's mental health impairment in her step four analysis, any error in finding the impairments non-severe at step-two is harmless.

findings. *See* 20 C.F.R. § 404.1520c(a)-(c).[6] The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id.* § 404.1520c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id.* § 404.1520c(b)(1). These rules do not apply to the ALJ analysis or consideration of nonmedical sources. *Id.* § 404.1520c(d).

Plaintiff argues that the ALJ failed to consider Dr. Siddiqui's opinion that Plaintiff could not bend, lift, twist, or lift greater than five pounds. Dkt. No. 8 at 23. To be sure, the ALJ did not specifically address Dr. Siddiqui's August 2018 statement as required. *See* 20 C.F.R. 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). However, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision[,]"

---

[6] A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record. 20 C.F.R. § 404.1513(a)(5).

*Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). Failure to discuss medical opinion evidence may be harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration."); *see Jessica Lynn J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-84, -- F. Supp. 3d ---, 2022 WL 17494109, at *4 (W.D.N.Y. Dec. 8, 2022) (failure to "discuss and/or weigh a medical opinion is not *per se* remandable error but may be found harmless error.").

In 2018, after a shunt placement to treat hydrocephalus, Plaintiff experienced headaches and was admitted to the "observation unit." Tr. 721. The following day, she was discharged in stable condition with instructions to follow-up with Dr. Siddiqui in two weeks. Tr. 722. On discharge, Dr. Siddiqui noted that Plaintiff should not bend, lift, twist or lift greater than five pounds. Tr. 723.[7] At subsequent follow-up appointment, Dr. Siddiqui did not provide restrictions. Tr. 970 ("conservative management is quite appropriate"), 972 ("she has done well"), 974 ("she continues to do well"), 978 ("she continues to do well").

Indeed, at her follow-up appointment, Dr. Siddiqui stated his plan was to "simply observe [Plaintiff] unless there is obvious reason for us to be concerned about malfunctioning LP shunt." Tr. 970. He recommended conservative management. *Id*. Plaintiff did mention "occasional headaches" at one follow-up

---

[7] The actual notation reads, "No bending lifting or twisting. Do not lift > 5#." Tr. 723.

appointment; however, Dr. Siddiqui's colleague who examined her did not provide
any functional limitations.  Tr. 978.  On examination, Plaintiff had full strength
(5/5) in her upper and lower extremities, no drift, no extinction, intact sensation,
and negative Romberg.  *Id.*  The provider noted that Plaintiff ambulated with a
quad cane.  *Id.*  At an appointment in August 2019, Plaintiff presented with
concerns of increased headaches.  Tr. 982.  On examination Plaintiff was in no
distress, she had full strength in her extremities, intact sensation, and ambulated
with a normal gait and station.  *Id.*  A neurological examination was recommended.
Tr. 983.  In sum, Dr. Siddiqui's limitations were temporary.  *See Luis S. v. Comm'r
of Soc. Sec.,* No. 19-CV-822, 2021 WL 534804, at \*4 (W.D.N.Y. Feb. 12, 2021) ("A
plain reading of the opinion itself makes clear that the limitations identified,
particularly those relating to standing and walking, were based upon plaintiff's
temporary inability to bear weight after his surgery.").

Although the ALJ did not specifically address Dr. Siddiqui's 2018 discharge
statement, the ALJ evaluated evidence in the record regarding Plaintiff's shunt
placement and headaches.  Tr. 21-22.  The ALJ considered evidence in the record
noting complaints of headaches occurring 1-2 times per week, which Plaintiff
reported resolved with over-the-counter medication.  Tr. 21, 23.  The ALJ discussed
evidence concerning Plaintiff's tumor resection and shunt placement.  Tr. 22.  The
ALJ noted objective treatment notations indicating that Plaintiff denied headaches.
*Id.*

Additionally, Dr. Siddiqui's stated postural limitations are not wholly inconsistent with the ALJ's determination that Plaintiff could perform past relevant work as a cashier/gambling, as generally performed.  Tr. 24, DOT 211.462-022.  Although the ALJ concluded Plaintiff could occasionally perform postural limitations (Tr. 20), the occupation of cashier/gambling does not require stooping, kneeling, crouching, or crawling (DOT 211.462-022).

Because Dr. Siddiqui's 2018 statement was provided relative to Plaintiff's discharge and the doctor did not provide any limitations at follow-up appointments, the limitations were temporary and any error in failing to address the limitations was harmless.  Moreover, although the ALJ did not specifically address Dr. Siddiqui's opinion, she considered evidence in the record concerning Plaintiff's headaches and shunt placement in her overall evaluation of Plaintiff's RFC and limited Plaintiff to a limited range of sedentary work.

Plaintiff next argues that the ALJ failed to evaluate Nurse Ouellette's opinion properly, asserting the ALJ was required to recontact her to resolve ambiguities in her statement.  Dkt. No. 8 at 23-24.  That argument fails as well.

On May 29, 2018, Nurse Ouellette provided a letter in which she outlined Plaintiff's medical diagnoses and treatment.  Tr. 1190.  She stated that Plaintiff had applied for disability, "which we support."  *Id.*  Nurse Ouellette did not provide specific functional limitations, but stated that Plaintiff had "been finding it difficult to work prior to brain tumor diagnosis, due to chronic and acute pain [in] both knees which limited ability to stand."  *Id.*

The ALJ considered Nurse Ouellette's statement and found it to be "not persuasive." Tr. 23. The ALJ reasoned that the statement did not "provide much in the way of a specific function-by-function analysis" and the conclusion of whether a plaintiff is disabled is a determination reserved to the Commissioner. *Id.*

The ALJ properly concluded that the nurse's statement that she supported Plaintiff's claim of disability, was a statement on an issue reserved to the Commissioner. Tr. 23. Indeed, statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive and an ALJ is not required to provide analysis about how he or she considered such evidence. 20 C.F.R. § 404.1520b(c)(3). Therefore, Nurse Ouellette's statement that she supported Plaintiff's claim for disability is neither valuable nor persuasive and the ALJ is not required to consider the evidence.

The ALJ also correctly noted that Nurse Ouellette's statement did not contain specific functional limitations. Tr. 23. Indeed, Nurse Ouellette's statement contained broad terms, stating that Plaintiff found it "difficult" to work and was "limited" in her ability to stand. Tr. 1190. Nurse Ouellette's statement, that Plaintiff was "limited" in her ability to stand (Tr. 1190), is not inconsistent with the demands of sedentary work, which require walking and standing "occasionally" (20 C.F.R. § 404.1567(a)). Therefore, the ALJ assessed the nurse's statement properly.

Lastly, contrary to Plaintiff's assertion, the ALJ was not obligated to re-contact Nurse Ouellette. Dkt. No. 8 at 24. The ALJ correctly noted that Nurse Ouellette's statement failed to contain specific work-related functional limitations.

Tr. 23.  Even if the statement were ambiguous, the ALJ was not required to re-contact her for further clarification.  "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record."  *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018).  The record contained sufficient evidence for the ALJ to make her determination.

### C.    RFC Determination

Plaintiff argues that the ALJ erred in formulating the RFC because she failed to consider opinion evidence, provided by consultative examiner Russell Lee, M.D. and Nurse Ouellette, opining that Plaintiff required a cane.  Dkt. No. 8 at 23-24.[8]  Plaintiff's argument fails.

Plaintiff's RFC is the most she can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id.* § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *see id.* §§ 404.1546(c), 416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity").  Additionally, the regulations direct an ALJ not to "defer or give any specific evidentiary weight, including controlling

---

[8] In support of her argument, Plaintiff cites to a treatment notation dated February 14, 2017, at which time the provider stated "no ambulatory assistive devices used." Dkt. No. 8 at 23 citing Tr. 296.  Plaintiff also cites a treatment record dated July 12, 2017; however, the notation does not mention a cane.  *Id.* citing Tr. 335.

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* § 404.1520c.

"[I]n order [for an ALJ] to find that a hand-held assistive device, such as a cane, is medically required, the record must contain medical documentation establishing the need for the device to aid in walking or standing." *Leda I. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 27, 32 (W.D.N.Y. 2021) (internal citations omitted); *see also* SSR 96-9p, 1996 WL 374185 at *7. Additionally, "the documentation must describe the circumstances for which [the cane] is needed (*i.e.*, all the time, periodically, or only in certain situations; distance and terrain; and other relevant information)." *Leda I.*, 545 F. Supp. 3d at 32.

The ALJ's determination not to include the use of a cane in the RFC was proper and supported by substantial evidence. The ALJ considered Dr. Lee's examination and observation that Plaintiff used a cane. Tr. 22. During his examination of Plaintiff, Dr. Lee observed that Plaintiff had a "somewhat shuffling gait with and without a cane" and noted she reported she used a cane "for balance when she is outdoors or on stairs." Tr. 694. Dr. Lee did not opine in his medical source statement that Plaintiff required the use of a cane for ambulation or balance. Tr. 696.

The ALJ also noted that Dr. Lee observed that Plaintiff had a normal stance and did not need assistance getting on and off the exam table. Tr. 22. The ALJ found the doctor's opinion, that Plaintiff had moderate limitation in prolonged standing, walking great distances, climbing stairs, squatting, and kneeling,

supported by his examination and consistent with the totality of the evidence. Tr. 23. Indeed, the opinion is consistent with the RFC limiting Plaintiff to sedentary work with additional non-exertional limitations. Tr. 20.

In January 2020, Nurse Ouellette stated that Plaintiff was "using a cane and is advised to continue to use a cane for balance and fall prevention until after she has had knee surgery." Tr. 1503. The ALJ concluded that the nurse's statement was "not persuasive." Tr. 23. The ALJ reasoned that the statement failed to provide a function-by-function assessment. *Id.*

The ALJ further considered objective treatment observations, which support her conclusion that Plaintiff did not require a cane to for ambulation or balance. The ALJ noted objective examinations in which providers noted Plaintiff walked independently, with a steady gait, and without any assistive devices. Tr. 22, 1335. The ALJ considered that Plaintiff's bilateral knee pain was treated with injections and providers did not provide additional limitations. Tr. 22. Indeed, treatment notations stated injections provided "good relief" of knee pain. Tr. 500. Providers who treated Plaintiff for her knee pain stated she was to "continue activities as tolerated;" however, they provided no additional restrictions. *Id.* The ALJ also considered physical examinations indicating no instability or gait disturbance. Tr. 22.

Although the record contained observations of Plaintiff's use of a cane, and a statement that a cane should be utilized until surgery, the record did not contain medical evidence establishing the medical need for a cane. Overall, the ALJ

19

properly assessed the evidence in the record regarding Plaintiff's use of a cane, together with evidence that Plaintiff had a steady gait and ambulated independently. *See Leda I.*, 545 F. Supp. 3d at 32 (ALJ properly assessed record reflecting plaintiff used a cane, but also had a normal gait with no instability, intact motor strength, and full range of motion).

### D.    Subjective Complaints

Plaintiff argues that the ALJ erred in evaluating her subjective complaints regarding the nature and frequency of her headaches. Dkt. No. 8 at 22, 25-26. Plaintiff asserts that the ALJ failed to consider her reports of "persistent afternoon headaches that were relieved by laying down for a while and ice pack until it resolved." *Id.* at 26, referring to Tr. 961. Plaintiff's argument fails.

The ALJ considered Plaintiff's subjective complaints concerning limitations due to her headaches and substantial evidence supported her determination that Plaintiff's statements were not consistent with the medical evidence and other evidence in the record. Tr. 23.

In general, the ALJ must employ a two-step analysis to evaluate the plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence,

20

and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ considered Plaintiff's reported headache symptoms, including that she had residual headaches, but there is no indication that further limitations in the RFC were required.  Tr. 21, 48.  The ALJ considered the medication Plaintiff took and the fact that she did not experience side effects from it, and observed that, apart from her brain surgery, her care had been conservative.  Tr. 21-23, 42.

Plaintiff contends that the ALJ misconstrued her testimony about her headaches.  But as outlined by the Commissioner, Plaintiff cites to a record from July 31, 2018, during the period when she was still undergoing residual treatment connected to her brain tumor.  Dkt. No. 9 at 16.  The ALJ acknowledged that Plaintiff underwent various procedures to remove her brain tumor and to handle residual effects from her surgery from March through August 2018.  Tr. 21-22,

*referring to, e.g.* Tr. 440-42, 462-64, 481-09, 511-14, 517-691, 721-22.  The ALJ

further noted evidence that Plaintiff reported her headaches resolved with Tylenol.

Tr. 21, 482.  After 2018, Plaintiff reported to providers that her headaches were

occasional and "self relieving."  Tr. 974, 978, 1015, 1455.  A review of the ALJ's

decision and the record fails to support Plaintiff's assertion that the ALJ

misconstrued her testimony.

      The ALJ properly evaluated Plaintiff's subjective complaints of the limiting

effects of her headaches.  The ALJ considered Plaintiff's testimony regarding the

nature of her headaches and the treatment she received.  Tr. 22.  The ALJ

considered the complex nature of Plaintiff's headaches in relation to her other

impairments including her tumor.  *Id.*  Although Plaintiff argues that her

headaches cause greater limitations than those imposed by the ALJ, Plaintiff fails

to meet her burden of showing that no reasonable factfinder could have reached the

ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin.,*

*Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012).

### E.    Hypothetical to Vocational Expert

      Plaintiff argues that the ALJ failed to pose hypothetical questions to the

vocational expert about Plaintiff's need for an assistive device and additional

limitations due to mental health impairments and headaches.  Dkt. No. 8 at 27.

Plaintiff's argument fails.

      Because the Court finds no error in the ALJ's RFC assessment, it likewise

concludes that the ALJ did not err in posing a hypothetical question to the

vocational expert that was based on that assessment.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

## F.    Additional Evidence Submitted to the Appeals Council

Plaintiff argues that the AC failed to account for new and material evidence that was directly related to already existing conditions and was probative.  Dkt. No. 8 at 27.  Plaintiff argues that imaging evidence dated February 19, 2020, "cannot exclude recurrent brain tumor," may support a finding that she meets a Listing, and "directly contradicts the ALJ's findings and may change the outcome of the ALJ's decision."  *Id.* at 28-29.[9]

The Commissioner's regulations state that the AC will consider additional evidence that is new, material, relates to the period on or before the date of the hearing decision, and shows a reasonable probability that it would have changed the outcome of the decision.  20 C.F.R. § 404.970(a)(5).  The AC evaluates the entire record, including any new and material evidence submitted, if it is chronologically relevant, to determine if the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently of record.  *See id.* § 404.970(b); *Bushey v. Colvin,* 552 F. App'x 97, 98 (2d Cir. 2014).  When the AC denies review, however, regardless

---

[9] Plaintiff makes the conclusory assertion that the CT scan results relate to Listing 11.05.  Dkt. No. 8 at 28.  However, Plaintiff does not advance her argument.  The Court is not required to comb the record in search of evidence in support of plaintiff's position.  *Skibniewski v. Comm'r of Soc. Sec.,* No. 19-CV-506, 2020 WL 5425343, at *3 (W.D.N.Y. Sept. 10, 2020).  Therefore, this specific argument will not be addressed.

of whether a plaintiff presents additional evidence or only argument, it is the ALJ's decision that becomes the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981; *see also Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004) (comparing an AC's denial of a request for review to a denial of *certiorari* which carries no import as to the merits of a case).

Accordingly, when the AC denies review, this Court must review the ALJ's decision in the context of the entire administrative record, including any new evidence, to determine if the ALJ's decision is supported by substantial evidence, rather than review the AC's denial. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The relevant inquiry is not whether the AC properly determined whether the evidence was new and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the AC. *Id.*

In other words, a reviewing court must determine whether the submitted evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); *see Bushey,* 552 F. App'x at 98 (new evidence "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case"). Remand is not required where the new evidence would not have resulted in a different outcome, such as where the evidence is merely cumulative or duplicative of evidence that the ALJ already considered. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 40 (2d Cir. 2020).

Here, there is no reasonable possibility that the evidence submitted would have influenced the ALJ to decide Plaintiff's claim differently. *Tricarico v. Colvin*, 681 F. App'x 98, 102 (2d Cir. 2017) (remand is only appropriate where there is a 'reasonable possibility' that newly submitted evidence would have influenced the ALJ to decide the disability determination differently). The evidence submitted to the AC consists of computerized tomography ("CT") scan of Plaintiff's head, which resulted in a finding that a "residual of recurrent mass [was] not excluded." Tr. 32. Although Plaintiff asserts the imagining undermines the ALJ's decision, she does not explain how.

The results of the CT scan do not undermine the ALJ's decision. The ALJ found that Plaintiff had the severe impairment of status post brain tumor removal. Tr. 18. The ALJ thoroughly summarized treatment records pertaining to this impairment, including symptomology. Tr. 21-22, 23. The imagining results note that a residual mass was not excluded. Tr. 23. However, these results alone do not support a finding that Plaintiff's condition worsened or that she had greater limitations than those found by the ALJ. Nor do the results conflict with any evidence the ALJ relied on in making her determination. In sum, the newly submitted evidence does not undermine the ALJ's evaluation of the evidence before her or the decision she reached based on such evidence.

## <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 9) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8).  The Clerk of the Court will close this case.


SO ORDERED.


Dated:          June 29, 2023
                Buffalo, New York

                                        _____
                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE